Shippen, President.
That is a motion to set aside the inquisition of a jury of inquiry in a foreign attachment, on the ground of the defendant’s evidence being refused to be heard before the sheriff and inquest, on the execution of the writ of inquiry.
On the part of the plaintiffs, two points have been made and argued :
1st. That on the execution of writs of inquiry generally, no evidence on the part of the defendant ought to be heard, as by suffering judgment to go by default, he had admitted the plaintiff’s cause of action ; and that, therefore, evidence on the part of the plaintiffs only should be heard.
2d. That, although it were admitted, that, generally, on executing writs of inquiry, after an interlocutory judgment, such evidence might be heard ; yet, in those cases where writs of inquiry are executed to ascertain the plaintiff’s demand, after judgments on foreign attachments, no such evidence should be admitted ; because the foreign attachment issues only to compel an appearance, and the defendant has it in his power, even after the return of the inquisition, by entering special bail, to try the cause in the usual manner, before a court and jury.
As to the first point, the law seems settled, that, after a judgment by default, the defendant has a right to offer his evidence to the jury of inquiry, to combat the plaintiff’s proofs ; and that where the sheriff refuses to hear the evidence on both sides, the court will direct a new writ of inquiry, (a)
As to the second point, it will be necessary to consider the law of attachments of 1705, and the practice under it, together with the reasons and extent of that practice.
The legislature, in framing this act, certainly took for their model the custom of London, concerning foreign attachments ; the principles of the law and mode of proceeding are in many respects conformable to that custom ; and the difference appears to be less in the act itself, than in the *395 practice under it. In London, the proceeding is by plaint against the defendant, supported by the oath of the plaintiff ; on this is founded the attachment and proceedings against the garnishee ; but no further proceeding is had against the defendant, until he enters special bail, and then a declaration is filed and a trial had in the usual way. The practice under our act is, first to obtain judgment against the defendant, then to file a declaration against him, according to the nature of the demand ; if in debt, the judgment stands for the sum declared for, without even an oath to support it ;(a) if in case, a writ of inquiry issues, for a jury to ascertain the demand, and then the scire facias issues against the garnishee. No actual notice is given to the defendant of the execution of the writ of inquiry ; his attendance is never expected, and *is, in most cases, impossible. It secms to be a mode adopted, not for a trial of the merits, but only to L conform to the nature of an action on the case, which requires a jury of inquiry to ascertain the sum for which the execution is to issue ; and it may be considered as a proceeding to inform the conscience of the court, in the room of the supposed oath in the action of debt. (b) In its nature, it appears to bo an ex parte proceeding, and not within the reason of the rules in executing writs of inquiry on judgments by default; where the defendant has regular notice, and has no other opportunity of making a defence.
The attachment law, and all proceedings under it, sizppose the defendant to be an absent person, and he has, in truth, no day in court, until he enters special bail, and thereby dissolves- the attachment; or comes in afterwards, when the money is recovered from the garnishee, to disprove the debt, which is done by a scire facias ad disprobandum débitum ; in either of which cases, he puts the plaintiff upon the legal proof of his demand, and is admitted tc make a full defence, (c) The right of making that defence before the jury of inquiry, has no foundation either in the act or the practice under it. The law supposes, from his absence, that he is then incapable of making a defence ; and for that reason, has afforded him ample time and opportunity afterwards to do it; nor does it accord with legal ideas, that he should have this opportunity of trying his cause, and also another afterwards upon entering special bail.
It has been said, that notice of executing these writs of inquiry has been usually set up in the prothonotary’s and sheriff’s offices ; and that this notice would be in vain, if the party might not appear and make his defence. This practice of putting up notices, must have been introduced by the gentlemen of the law ex majore cautela. If it were a new case, we should perhaps think it nugatory ; as a person abroad cannot be supposed to take notice of a paper put up in the office, which he could never see. However, as it is the practice, it is proper it should be continued ; and it may, at least, serve the purpose of giving the garnishee, or the attorney in fact of the defendant, an opportunity of knowing, and apprising his constituent, of the nature of the plaintiff’s demand, that he may be prepared to defend himself against it.
*396 Upon the whole, we are of opinion, that the refusing to admit the defendant in the attachment to produce his evidence before the jury of inquiry, is not a sufficient reason for setting aside the inquisition, (a)
Rule discharged.

 See Moore v. Hess, 4 Yeates 261.

 In Pancake v. Harris, 10 S. & R. 109, it was said by the court, that the act of 1806, which directs proceedings by action of debt, is inapplicable to the case of a foreign attachment.

 See Pancake v. Harris, 10 S. & R. 109.

 Brealsford v. Meade, 1 Yeates 495; Fitch v. Ross, 4 S. & R. 565.

 See Moore v. Hess, 4 Yeates 261.